**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN MODA, | Case No. CV 16-0545 FMO (Ex) |
| Plaintiff, | |
| v. | **FINDINGS OF FACT and CONCLUSIONS OF LAW** |
| LAW OFFICES OF ROBERT C. ARONOFF, et al., | |
| Defendants. | |

**INTRODUCTION**

On January 25, 2016, Kevin Moda ("plaintiff" or "Moda") filed this action against the Law Offices of Robert C. Aronoff, a Professional Corporation ("Aronoff Law") and Robert C. Aronoff ("Aronoff") (collectively, "defendants"), alleging that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. (See Dkt. 1, Complaint). Specifically, plaintiff alleges that defendants sent him a letter demanding payment for past-due rent which violated the FDCPA because he did not owe back-rent, and the letter failed to conform to the requirements set forth in the FDCPA. (See id. at ¶¶ 4-7, 15-17, 20-35).

A bench trial was held and the court, having heard live testimony and duly considered the evidence, the credibility of the witnesses, the entire file, and the contentions and arguments of counsel, hereby makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

**FINDINGS OF FACT**

1. On January 18, 2016, plaintiff was living at 2170 Century Park East, Apartment 1606, Los Angeles, California ("Apartment"). (Dkt. 105, Pretrial Conference Order ("PTO") at ¶ 5.A.).

2. An undated cover letter purporting to be from Mordecai Notis ("Notis") of L & M Construction, Inc. regarding the rental of the Apartment stated that Notis "would like to lease the [Apartment] as part of a compensation package for a key employee" and that "Notis Enterprises is ready, willing and able to enter into an immediate lease and immediately occupy" the Apartment. (Dkt. 138, Reporter's Transcript ("RT") at 24; Exh. 16 ("Lease") at 121[1]).

3. The Residential Lease for the Apartment identifies "Notis Enterprises, Kevin Moda" as the "Tenant" and contains the apparent signatures of Notis and Moda. (Exh. 16 at 122, 127; Dkt. 138, RT at 24-25, 49-51). Notis is identified as the guarantor. (Exh. 16 at 127).

4. The Lease states that "[t]he Premises are for the sole use as a personal residence by the following named person(s) only: Kevin Moda." (Exh. 16 at 122).

5. The Apartment was plaintiff's sole residence. (Dkt. 105, PTO at ¶ 5.B.).

6. Some of the monthly rent for the Apartment was paid using checks issued by various entities created by plaintiff, and other individuals, including his trial counsel. (Exh. 17; Dkt. 138, RT at 39-46). Although the monthly rent was paid by checks issued by various entities and individuals, plaintiff testified that the money was his own income because the checks came from his own companies, and with respect to checks from his counsel and other individuals, they owed him money and he simply directed them to pay his rent directly. (Dkt. 138, RT at 46, 57).

7. On January 18, 2016, defendants mailed and emailed a letter to plaintiff. (Dkt. 105, PTO at ¶ 5.C.; Dkt. 84, Trial Declaration of Kevin Moda ("Moda Decl.") at ¶ 2; Dkt. 138, RT at 73); Exh. 4 ("January 18 Letter")). The letter, which was addressed to plaintiff and Notis of Notis Enterprises, (see Exh. 4 at 28; Dkt. 138, RT at 83), stated:

---

[1] Page citations to exhibits are to the "Trial Exhibits" number located on the lower left-hand side of the page.

> This firm represents Brivanlou Pacoima LLC, the successor of Harold Igdaloff the trustee of the 1993 Igdaloff Family which rented the referenced premisses to you beginning February 1, 2013. Mahin Hakak, the managing member of Brivanlou Pacoima, LLC informs me that as of this date, you are 4 months behind in your rent payments. Please refer to the attached ledger.
>
> I am writing this letter as a courtesy to give you the opportunity to pay the outstanding amount in full without the inconvenience and legal expense of litigation. [¶] The amount due is $15,600, plus late fees of $1,560.00. If the $15,600.00 is paid before 5:00 pm on January 22, 2016, the late fees will be waived. If not, I have been authorized to begin legal proceedings to evict you from the premisses and collect the amount due, including late fees, attorney fees and court costs.
>
> If you have proof of any payments other than as shown on the ledger, please provide them with your payment of the balance of the amount due.
>
> Please understand, this is not the first in a series of collection letters. If the amount is not paid by 5:00 pm on January 22, 2016, we will proceed with the myriad of legal remedies available to my client.

(Exh. 4 at 28-30).

8. The January 18 Letter was signed by Aronoff. (Exh. 4 at 29).

9. The January 18 Letter was the first communication between plaintiff and the defendants. (Dkt. 105, PTO at ¶ 5.D.; Dkt. 138, RT at 28). Prior to receiving the January 18 Letter, plaintiff had never heard of or dealt with defendants. (Dkt. 84, Moda Decl. at ¶ 3).

10. On January 19, 2016, plaintiff responded to the January 18 Letter. (Dkt. 105, PTO at ¶ 5.E; Dkt. 84, Moda Decl. at ¶¶ 8, 12; Exh. 5 ("January 19 Letter")).

1 | 11. Plaintiff's January 19 Letter stated, among other things, that "Notis Enterprises has not paid, nor have I been its employee since early 2014. I do not know why it and its principal were carbon copied on the collection letter re rents for 2015, in Jan 2016." (Exh. 5 at 32). It added that, "as to the rents: [plaintiff's] occupancy of the premises does not include the labor associated with accounting for Ms. Hakak. I have graciously provided evidence of payments of rents twice already and will not subject myself to further inquiry on the issue." (Id.).

12. In the January 19 Letter, plaintiff stated that two weeks earlier, he had "received a call from Ms. Hakak advising [him] that she had not received the rent for Jan 2016 and based on the assertion of Ms. Hakak, [plaintiff] caused to be issued a second check with the notation that it was a duplicate payment[.]" (Exh. 5 at 33). Plaintiff accused Ms. Hakak of having cashed the check in December 2015, and crossing out the notation in the memo line that indicated the payment was for January 2016 to instead reflect that it was payment for December 2015. (See id.). Plaintiff stated: "I wish to impress upon you that my then calm instead of vitriol emitted from the fact that I was dealing with matters of far important significance to me. However, in light of your letter and meritless position, I insist that the gravity of your client's conduct be taken into consideration before you step further." (Id.).

13. Plaintiff added: "In sum, I do not wish for you to wait till January 22, 2016, to come to a date for action. If Ms. Hakak brings an action premised on an allegation of my failure to pay rents, I'd just assume that she have the data to back up the assertion or risk incurring / becoming liable for the defense of the action and most likely, the malicious prosecution liability that will follow." (Exh. 5 at 34).

14. On January 20, 2016, Aronoff responded to plaintiff's January 19, 2016, Letter via email. (See Dkt. 105, PTO at ¶ 5.F.; Exh. 6 ("January 20 Email")).

15. The January 20 Email stated, among other things, that plaintiff was "4 months behind in [his] rent" and that unless Aronoff was "provided with evidence (preferably cancelled checks) showing additional payments, [Aronoff] w[ould] proceed to take legal action to evict [plaintiff] and collect the unpaid rent." (Exh. 6 at 38). Aronoff stated: "While you may feel that you have previously evidence of payments to Ms. Hakak you are going to have to provide it to me. This can

be done in response to this email, or after you have expend[ed] considerable funds and time to have the Court order it. I will remind you that the Lease obligates you to pay Ms. Hakak's legal fees. Therefore her offer to waive late charges and the savings in legal fees should make it worth your while to provide proof of your payment of rent now, rather than later." (Id.).

16. On January 20, 2016, plaintiff responded to Aronoff's email of the same date. (Exh. 7). Among other things, plaintiff stated that he was current in his rent, (see id. at 40-41), and that "Notis [was] being sued for not honoring his obligations." (Id. at 40). Plaintiff offered to provide an accounting in exchange for one month of free rent. (Id. at 41). Plaintiff added: "I don't shy away from litigation and welcome it instead." (Id.; Dkt. 138, RT at 13).

17. Subsequently, unlawful detainer actions were filed in state court. (Dkt. 84, Moda Decl. at ¶ 21; Dkt. 138, RT at 15-19, 21, 58). Plaintiff was ordered to vacate the Apartment. (Dkt. 138, RT at 20).

18. At some point, Aronoff learned that the amount of back rent stated in the January 18 Letter was not accurate. (See Dkt. 138, RT at 70-72). Rather than four months of unpaid rent, there was only one month. (See id. at 72) ("I'm 100 percent sure now that he [plaintiff] was one month behind in January. . . . [H]e was not four months behind.").

19. In January 2016, defendants maintained a website that stated, among other things, that Aronoff Law handles "all aspects of a Civil Litigation practice," including "Unlawful Detainer" and the "Enforcement of Judgments (debt collection)." (Exh. 15 at 103; see also RT at 77-78). The website included 46 types of cases including "Civil Litigation," "Real Estate," and "Bankruptcy and Creditors' Rights." (Exh. 15 at 103-04; Dkt. 87, Trial Declaration of Robert C. Aronoff ("Aronoff Decl.") at ¶ 13). Since this action was filed, the "Enforcement of Judgments (debt collection)" language has been removed from the website. (Dkt. 138, RT at 78).

20. Over 50% of the fees earned by Aronoff Law (excluding fees relating to the current litigation) over the past two years have come from transactional work. (Dkt. 87, Aronoff Decl. at ¶ 9).

21. Over the last four years, defendants have been retained to collect only one unpaid judgment, which related to a judgment in favor of Aronoff's uncle, Harold Igdaloff ("Igdaloff"), for

5

attorney's fees and costs. (Dkt. 87, Aronoff Decl. at ¶ 10; Dkt. 138, RT at 80).

22. Defendants have experience in unlawful detainer matters, but only in connection with corporations. (Dkt. 138, RT at 97). They file two or three unlawful detainer cases a year, which typically involve commercial leases and properties with commercial tenants. (Dkt. 87, Aronoff Decl. at ¶ 18).

23. Other than the matter involving plaintiff, the only debt collection cases Aronoff has handled have been on behalf of the debtor. (Dkt. 138, RT at 78; see also Dkt. 87, Aronoff Decl. at ¶ 9).

24. If defendants are asked to do a residential unlawful detainer, Aronoff will generally refer it to an outside firm that specializes in residential evictions. (Dkt. 87, Aronoff Decl. at ¶ 18; see Dkt. 138, RT at 97-98) (If someone called Aronoff with a dispute involving a delinquent client relating to an apartment building, Aronoff would tell them to call "H&R Block" because such "mills can get . . . people out a lot cheaper than [he] can."). Aronoff does not "evict people from apartments." (Dkt. 138, RT at 98).

25. Aronoff accepted plaintiff's case because the tenant, as reflected in the Lease and cover letter, was a company – Notis Enterprises. (Dkt. 87, Aronoff Decl. at ¶ 19). In addition to the Lease and cover letter, the rent was paid by various entities, including: Silver Lake Real Estate, LLC; GFYS, LLC; JKDM, LLC; and The Law Offices of Payam Taheri. (Id. at ¶ 19; Dkt. 138, RT at 39-46; Exh. 17). Another reason Aronoff undertook this matter is because Igdaloff referred him to Brivanlou Pacoima, LLC, which is managed by Hakak, who is an "elderly friend of his." (Dkt. 138, RT at 80-81). Igdaloff asked Aronoff whether he could "take care" of the "problem" "Mahin is having" with plaintiff. (Id. at 82). After Aronoff learned that Moda was the sole resident of the Apartment, he continued with the matter because he "had already taken on the case." (Id. at 98). The court finds Aronoff credible on this point.

26. Defendants have no regular employees and employ only a part-time assistant who is mostly engaged in real estate matters, and performing some office work. (Dkt. 87, Aronoff Decl. at ¶ 17).

27. Defendants do not have any system or contractors to do debt collection work. (Dkt.

87, Aronoff Decl. at ¶ 17).

28. Any finding of fact that more correctly constitutes a conclusion of law should be treated as such.

## **CONCLUSIONS OF LAW**

29. "Congress enacted the FDCPA in 1977 . . . to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577, 130 S.Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692(e)).

30. "There are four elements to an FDCPA cause of action: (1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of a [consumer] transaction entered into for personal purposes; (3) the defendant is a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a-1692o." Wheeler v. Premiere Credit of North America, LLC, 80 F.Supp.3d 1108, 1112 (S.D. Cal. 2015); Warwick v. Bank of New York Mellon, 2016 WL 2997166, *16 (C.D. Cal. 2016). "The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status."[2] Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 60 (2nd Cir. 2004).

31. A "debt collector" under the FDCPA is (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); Schlegel, 720 F.3d at 1208.

32. A "debt" under the FDCPA is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are

---

[2] Because the court finds that plaintiff failed to meet his burden of proving that defendants are debt collectors as defined by the FDCPA, the court only addresses that element. Cf. Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1208-10 (9th Cir. 2013) (affirming dismissal of complaint because plaintiffs failed to sufficiently plead defendant was a debt collector as defined by the FDCPA).

7

the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5). As defined, the FDCPA "limits 'debt' to consumer debt, i.e., debts 'arising out of . . . transaction[s]' that 'are primarily for personal, family, or household purposes.'" Heintz v. Jenkins, 514 U.S. 291, 293, 115 S.Ct. 1489, 1490 (1995) (quoting 15 U.S.C. § 1692a(5)).

33. The first definition of debt collector requires that the "principal purpose of [defendants'] business is debt collection." Schlegel, 720 F.3d at 1209; 15 U.S.C. § 1692a(6). Plaintiff failed to proffer evidence that the principal purpose of defendants' law practice is consumer debt collection. In addition, defendants put forth unrebutted evidence that their unlawful detainer practice involves corporations (Dkt. 138, RT at 97), and even then, defendants typically only file two to three unlawful detainer cases a year. (Dkt. 87, Aronoff Decl. at ¶ 18). Moreover, over the last four years defendants have been engaged to collect only one unpaid judgment. (Id. at ¶ 10); see, e.g., Turner v. Cook, 362 F.3d 1219, 1228 (9th Cir.), cert. denied, 543 U.S. 987 (2004) (holding that judgment debt was a result of a tort and therefore not a debt within the meaning of the FDCPA). Further, defendants have no regular employees and employ only a part-time assistant who is mostly engaged in real estate matters, and handling office work. (Dkt. 87, Aronoff Decl. at ¶ 17). Finally, defendants do not have any system or contractors to do debt collection work. (Id.). In short, there is no evidence that the principal purpose of Aronoff Law is the collection of consumer debt. See Schlegel, 720 F.3d at 1209 (Establishing only that "some part" of defendants' business is debt collection is not sufficient to prove a claim under the FDCPA.).

34. The second definition of debt collector requires that defendants "regularly collect[] or attempt[] to collect" debts owed to another. Schlegel, 720 F.3d at 1209; 15 U.S.C. § 1692a(6). The FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Heintz, 514 U.S. at 299, 115 S.Ct. at 1493; McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011).

35. Again, plaintiff has failed to carry his burden of showing that defendants regularly collect or attempt to collect debts owed to others. In addition, defendants have established that they do not regularly engage in consumer debt activity. (See Dkt. 138, RT at 97; Dkt. 87, Aronoff Decl. at ¶¶ 10, 18); see also Duke v. Nachtigal, 2012 WL 195466, *5 (D. Or. 2012) (granting

summary judgment to defendants – an attorney and law firm – on FDCPA claim because they did not conduct debt collection activities with sufficient regularity to come within the scope of the FDCPA since during the relevant time period, their debt collection activities constituted at most 3.2 percent of their work; they did not have any staff solely dedicated to collection activities; they did not appear to have any consumer credit clients; and the attorney only issued six writs of garnishment per year).

36. Any conclusion of law that more correctly constitutes a finding of fact should be treated as such.[3]

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT plaintiff's action is dismissed with prejudice. Judgment shall be entered accordingly.

Dated this 27th day of September, 2017.

/s/<br>
Fernando M. Olguin<br>
United States District Judge

---

[3] It is unnecessary to address defendants' waiver defense.